# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Jack Broward Todd,
     Petitioner,


      vs.                            Case No. 1:05cv737
                                  (Spiegel, S.J.; Black, M.J.)


Jeffrey Wolfe,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

     Petitioner, an inmate who was in state custody at the Noble Correctional Institution in Caldwell, Ohio, when the instant action commenced,[1] has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his forgery conviction in Brown County, Ohio, Court of Common Pleas Case No. 20022172.[2]  This matter is before the Court on the petition (Doc. 1) and respondent's "Answer/Return Of Writ" with exhibits (Doc. 6), as well as additional exhibits submitted by petitioner in a pleading entitled "Petitioner's Expansion Of The Record" (Doc. 10).

---

[1]  On June 30, 2006, petitioner notified the Court that effective July 31, 2006, he would no longer be incarcerated, having fully served his prison term by then.  He provided the Court with a residential address in Grove City, Ohio, for all further correspondence after July 31, 2006. (*See* Doc. 11).

[2]  In other habeas petitions filed with this Court, petitioner has sought federal habeas corpus relief based on claims challenging his forgery convictions in Clermont County, Ohio, Court of Common Pleas Case Nos. 2002-CR-00524 and 2002-CR-00570.  *See Jack Broward Todd v. Jeffrey Wolfe*, Case Nos. 1:04cv544 and 1:05cv244 (Beckwith, C.J.).  In both those cases, the petition for writ of habeas corpus was denied with prejudice.  *See id.*, Case No. 1:04cv544 (Docs. 41, 43, 44); Case No. 1:05cv244 (Docs. 20, 22, 23).

## Procedural Background

On September 10, 2002, the Brown County, Ohio, grand jury indicted petitioner on twenty-six counts of forgery as defined in Ohio Rev. Code § 2913.31(A)(2). (Doc. 6, Ex. 1). Petitioner initially entered a not-guilty plea and filed a *pro se* motion to dismiss because, among other things, he had been denied his right to a speedy trial and effective assistance of counsel. (*Id.,* Exs. 2-3). Petitioner's motion to dismiss was dismissed on December 16, 2002 "in the Court's Chambers with the Prosecuting Attorney, the Defendant, and the Defendant's Counsel present." (*See id.,* Ex. 4).

Respondent states that the "case proceeded to a jury trial and, at the close of the State's case, plea negotiations took place and [petitioner] changed his plea to guilty as charged in the indictment" in exchange for a recommended sentence of nine (9) months in prison on Count I of the indictment and "community control" sanctions on the remaining charges. (*Id.,* Brief, p. 2; *see also id.,* Ex. 5). A hearing was held on December 17, 2002, wherein the trial court orally accepted petitioner's guilty pleas and made findings of guilt on each charge after extensive discussion with petitioner about his understanding of the terms of the plea agreement and of the constitutional rights he was waiving. (*Id.,* Ex. 56).

A few weeks later, on January 13, 2003, a sentencing hearing was held, and an Entry signed by defense counsel, the prosecuting attorney and the trial judge was filed memorializing the terms of the plea agreement and the court's acceptance of petitioner's guilty pleas and findings of guilt. (*Id.,* Exs. 5, 57). On January 31, 2003, the trial court entered a Judgment Entry Of Sentence, wherein petitioner was sentenced in accordance with the written plea Entry to a nine (9) month prison term on Count I of the indictment, with a 124-day credit "as of this date along with future custody days while Defendant awaits transportation to the appropriate state institution," followed by five (5) years of "community control" under the supervision of the Adult Probation Department on the remaining charges. (*See id.,* Exs. 5, 7).

In the sentencing order, the court informed petitioner that "a violation of any of the terms and conditions of community control . . . may lead to a more restrictive sanction, a longer sanction, or a prison term of up to twelve (12) months upon each count." (*Id.*). The court further notified petitioner that it "will select a prison term of twelve (12) months on Count II, which would run consecutive to

2

Count I, a prison term of twelve (12) months upon Count III, which shall run consecutive to Counts I and II; and prison terms of twelve (12) months each upon Counts IV through XXVI which shall run concurrent to all other counts." (*Id.*). Finally, the court ordered petitioner to serve as part of his sentence any term up to a maximum of three (3) years of post-release control that may be imposed by the Parole Board, as well as any prison term for violation of that post-release control. (*Id.*).[3]

On January 7, 2003, petitioner filed a *pro se* notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District, in Case No. CA2003-01-001, which was dismissed on March 12, 2003 for lack of "final appealable order" when the notice was filed. (*Id.,* Exs. 11-12). Thereafter, petitioner filed a *pro se* notice of appeal on March 28, 2003 in Case No. CA2003-03-006, and on May 9, 2003, a *pro se* motion to reopen the appeal in Case No. CA2003-01-001. (*Id.,* Exs. 13-14). On June 3, 2003, the Ohio Court of Appeals granted petitioner's motion to reopen the appeal in Case No. CA2003-01-001 and consolidated the two appeals under that case number. (*Id.,* Exs. 15-16).

With the assistance of counsel, petitioner filed an appellate brief on November 10, 2003, alleging as the sole assignment of error that the trial court erred in imposing a sentence which "was not the sentence agreed to between appellant, the State of Ohio and the court." (*Id.,* Ex. 17). On June 7, 2004, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*Id.,* Ex. 19).

Proceeding *pro se,* petitioner filed a timely *pro se* notice of appeal to the Supreme Court of Ohio. (*Id.,* Ex. 20). In his memorandum in support of jurisdiction, petitioner asserted as propositions of law the following claims of error:

_____

[3] On January 27, 2003, prior to entry of the sentencing order, petitioner filed a motion to arrest judgment on the ground that the charged offenses were not committed in Brown County. (*See* Doc. 6, Ex. 6). After entry of the sentencing order, petitioner sent letters to the trial judge inquiring about the status of this motion and also filed a motion to arrest judgment with the Ohio Court of Appeals, Twelfth Appellate District. (*Id.*, Exs. 8-9). On February 27, 2003, the trial court denied the motion to arrest judgment, finding that "the Indictment did charge offenses and that this Court did have jurisdiction over the offenses charged." (*Id.,* Ex. 10).

1.  A plea-bargain is a contract and is enforceable with specific performance, and a guilty plea induced by unfulfilled and unfulfillable promise is void. . . .

2.  The trial court was without jurisdiction to impose sentence, consequently the judgment and conviction is void. . . .

3.  Defendant-appellant that has been denied his constitutional right of effective assistance of counsel, has been denied his constitutional right(s) of due process of law, and equal protection therefrom. . . .

(*Id.,* Ex. 21).

On October 27, 2004, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 23).

In the meantime, on July 7, 2003, during the pendency of petitioner's direct appeal before the Ohio Court of Appeals, another attorney filed a petition for post-conviction relief that petitioner had prepared *pro se* with the Brown County Common Pleas Court .  (*Id.,* Ex. 27).  In this petition, petitioner presented thirteen grounds for relief.  Specifically, he claimed that (1) the Brown County Sheriff, Clerk of Court and prosecutor had engaged in "misconduct;" (2) he was "denied his right to be present at his preliminary hearing or even be represented," and that the dismissal of certain charges triggered "double jeopardy" concerns; (3) the prosecutor engaged in misconduct with respect to "disparity in the bond," which deprived petitioner of the opportunity to obtain counsel of his choice; (4) defense counsel did not "relay information to the court and prosecutor [as requested by petitioner] that crimes were being commit[t]ed in petitioner's name, while incarcerated in Brown County Jail;"(5) the State failed to disclose a witness interview, which contained exculpatory information; (6) defense counsel was ineffective in refusing to investigate the case; (7) the prosecutor improperly withheld exculpatory "finger print analysis" results, which were "negative on all (26) checks tested;" (8) he was denied his right to a speedy trial, and a laundry list of other errors occurred during the jury trial; (9) he was "threatened, coerced, and forced to plea[d] guilty, by the [trial] court, prosecutor and defense counsel" under terms not agreed upon by him;  (10) the trial court lacked jurisdiction over the charges because the alleged offenses were not committed in Brown County; (11)

4

the court improperly imposed a sentence on January 13, 2003 despite the fact that petitioner had repeatedly requested in the Clermont County cases that he be evaluated as a candidate for "treatment" at a "C.B.C.F. facility;" (12) the Clerk of Court committed an error in processing petitioner's appeal; and (13) the judgment "entered on the record orally on January 13, 2003, but not filed until January 31, 200[3]" prevented him from perfecting an appeal as of right. (*Id.*).

On June 18, 2004, the Common Pleas Court overruled each of petitioner's claims of error and denied his petition for post-conviction relief. (*Id.,* Ex. 34). Petitioner filed a *pro se* appeal to the Ohio Court of Appeals, Twelfth Appellate District, which affirmed the trial court's judgment on May 17, 2005. (*Id.*, Exs. 35-36, 39).[4] Petitioner appealed further to the Supreme Court of Ohio, which denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question" on October 12, 2005. (*Id.,* Exs. 40-41, 43).

It appears from the record that on August 17, 2004, while his appeal from the Ohio Court of Appeals' direct appeal decision was pending before the Supreme Court of Ohio, petitioner also filed a timely *pro se* application to reopen his appeal with the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. 24). In this application, petitioner alleged his appellate counsel was ineffective because he failed to assert as assignments of error a double-jeopardy claim; that petitioner was denied a fair and speedy trial; that petitioner's guilty plea was improperly "induced by unfulfilled or unfulfillable promises;" that the plea bargain entered into by petitioner is an enforceable contract requiring "specific performance;" that the trial court lacked jurisdiction because the charged crimes were not committed in Brown County; ineffective assistance of trial counsel claims; an equal protection claim based on the trial court's purported failure to "grant **ALL pre-trial** confinement;" that petitioner's conviction and sentence violate the Sixth Amendment under *Blakely v. Washington,* 542 U.S. 296 (2004); that the court, defense counsel and the prosecutor improperly withheld material exculpatory evidence from petitioner in violation of *Brady v. Maryland,* 373 U.S. 83 (1963); that petitioner's guilty plea was not "knowingly, intelligently and voluntarily entered;" and that petitioner was

---

[4] On May 27, 2005, petitioner filed an application for reconsideration based on the trial court's issuance on March 24, 2005 of an amended sentencing entry, *see infra,* p. 6, which petitioner contended supported his claims of prosecutorial "misconduct and misrepresentations" and defense counsel's ineffectiveness. (Doc. 6, Ex. 45). The Ohio Court of Appeals denied petitioner's application for reconsideration on July 8, 2005. (*Id.,* Ex. 47).

5

denied his right to the assistance of counsel "at **all** stages of the criminal process." (*Id.*) (emphasis in original).

On November 19, 2004, the Ohio Court of Appeals denied petitioner's application for reopening. (*Id.,* Ex. 26). It appears from the Court of Appeals' docket records that petitioner did not appeal this decision to the Supreme Court of Ohio. (*See id.,* Exs. 53-54).

Apparently, petitioner next filed a motion on February 1, 2005 with the trial court, which caused that court to *sua sponte* issue a judgment entry on March 24, 2005 amending petitioner's original sentence upon review of the transcript of the plea hearing held December 17, 2002. (*See id.,* Ex. 44). The court acknowledged in its order that "the recommended terms of the plea agreement at the plea hearing itself were stated to be three years of community control sanctions, and not five years." (*Id.,* p. 2). The court further noted that "both the Entry of Plea of Guilty, which was filed January 13, 2003, and the Judgment Entry of Sentence each provide for five years of community control sanctions being the terms of the plea." (*Id.,* p. 3). In the interests of justice and equity so as to reflect the agreement stated on the record at the plea hearing, the court therefore amended petitioner's sentence by decreasing the term of his community control sanctions from five (5) to three (3) years "as set forth at the time of the Defendant's Entry of his Pleas of Guilty to Counts Two through Twenty-Six." (*Id.*).

Thereafter, it appears that petitioner attempted a second time to reopen his appeal by filing on June 17, 2005 a *pro se* motion for judicial notice and relief from judgment with the Ohio Court of Appeals, Twelfth Appellate District. (*See id.,* Ex. 48). Petitioner claimed in the motion that the amended sentencing entry of March 24, 2005 revealed that the prosecutor had made "misrepresentations to the Court at the Sentencing Hearing on January 13th, 2003 while trial counsel s[a]t idle and went along with the d[i]storted facts presented." (*Id.*). The motion was denied without opinion on July 14, 2005. (*Id.,* Ex. 49).

Finally, in September 2005, petitioner filed with the Brown County Common Pleas Court a motion for judicial notice and relief from the March 24, 2005 Judgment Entry based on attached exhibits, which he claimed established "the misrepresentations presented to this Court in rendering judgment on January 13th, 2003, and March 24th, 2005." (*Id.,* Ex. 50). The trial court denied petitioner's motion on November 3, 2005. (*Id.,* Ex. 51).

Petitioner commenced the instant federal habeas corpus action in November 2005. (*See* Doc. 1). In the petition, Petitioner asserts four grounds for relief, which contain numerous allegations of error challenging his conviction and sentence.

Specifically, in Ground One of the petition, petitioner alleges he was denied his right to a "fair and speedy trial." (*Id.,* attachment, p. 1).

In Ground Two, petitioner claims his Sixth Amendment rights to counsel were violated because he was not represented by an attorney at a pre-indictment "preliminary hearing" where certain charges were dropped; was denied the opportunity to obtain counsel of his choice due to the court's setting of a $50,000 bond at a post-indictment hearing held on September 13, 2002; and was denied "effective assistance of appellate counsel." (*See id.,* pp. 1-2, ¶¶1-4). Petitioner further contends that his trial attorney provided ineffective assistance in violation of the Sixth Amendment essentially because counsel failed to investigate or otherwise follow petitioner's instructions regarding potential defenses stemming from certain "exculpatory" evidence brought to petitioner's attention on September 16 and November 4, 2002; failed to request a "bond reduction" at a pretrial conference held October 1, 2002; failed to attend a pretrial conference on November 12, 2002; intimidated petitioner into entering the plea agreement; failed to object when petitioner was sentenced to more than a six-month prison term with three years of community control; denied that an agreement had been made with counsel in the Clermont County criminal cases that petitioner would be sentenced to a treatment as opposed to a prison facility; and failed to assist petitioner with his *pro se* demand on December 27, 2002 for withdrawal of the plea, as well as his *pro se* motion to arrest judgment. (*See id.,* pp. 2-4, ¶¶5-17).

In Ground Three of the petition, petitioner claims he was denied due process essentially because (1) as argued during the jury trial at the close of the State's case, the State failed to prove the elements of forgery charged against petitioner; (2) a double jeopardy violation occurred when petitioner was "re-indict[ed]" after certain charges were dismissed; (3) petitioner was "threatened and coerced" into entering a guilty plea; (4) the trial court was improperly "involve[d] in the plea-bargain process,"and failed to present the agreement in writing or on the record as required by "federal law . . . and Criminal Rule 11, and 22;" (5) petitioner was sentenced to an "enhanced" prison term in violation of the plea agreement; (6) the

7

prosecutor had petitioner transported from Clermont to Brown County "to ensure the trial court would impose a prison term as opposed to treatment at a C.B.C.F. facility;" (7) the prosecutor made "'blatant' misrepresentations" to the court during the trial and sentencing proceedings; (8) the prosecutor withheld certain "exculpatory" evidence; (9) petitioner was denied the right to present "all . . . constitutional claims . . . in the State's appellate process" on direct appeal from his conviction and sentence; and (10) the state courts erred in certain rulings rendered on discretionary review and in the post-conviction proceedings. (*Id.,* pp. 5-6, ¶¶1-15).

Finally, in Ground Four of the petition, petitioner argues that he was denied equal protection when he did not receive credit at sentencing for "all jail-time" served; he was denied assistance of counsel at "every stage of the criminal process"–i.e., at the time certain criminal charges were dismissed prior to his indictment; he was not provided a "meaningful opportunity" for treatment consideration because of the prosecutor's "misrepresentations . . . [w]hile defense counsel s[a]t idle;" his plea was accepted and he was sentenced despite the fact that he had not signed the plea agreement, had not waived his jury trial rights, "protested the sentence and declared [his] innocen[c]e," and informed the trial court of the prosecutor's "malicious prosecution" and defense counsel's ineffectiveness; and he was improperly sentenced under Ohio's unconstitutional sentencing statutes, as well as in violation of Ohio law which requires the imposition of a "prison term **or** community control sanctions." (*Id.,* pp. 6-7, ¶¶ 1-7) (emphasis in original).

In the return of writ, respondent concedes that the Court has jurisdiction to consider the petition and that the petition is not barred from review on statute of limitations grounds.[5] (Doc. 6, Brief, pp. 23-25). Moreover, it appears that petitioner has exhausted all available state court remedies with respect to his grounds for relief.

---

[5] Petitioner has submitted evidence to show that contrary to a statement made by respondent in the return of writ, he was serving the sentence imposed by the Brown County Common Pleas Court when he commenced the instant action. (*See* Doc. 10). Although such evidence is relevant to determining the Court's "in custody" jurisdiction over the petition, respondent has conceded that point. (*See* Doc. 6, Brief, p. 25). The evidence, therefore, is immaterial and will not be considered in assessing whether or not petitioner is entitled to relief based on any of his claims alleged as grounds for relief in the petition.

Respondent argues in the return of writ that "[w]ith the exception of his claim in Ground Two wherein [petitioner] maintains that his guilty plea was coerced and that his trial counsel was ineffective in regard to advising him about the plea, [petitioner] fails to prese[n]t a proper challenge to his conviction and sentence for the reason that he waived all of his stated challenges when he entered a negotiated guilty plea with an agreed sentence." (*Id.,* pp. 30-33). Respondent further contends that petitioner has waived all but two claims due to his procedural defaults in the state courts, and that the non-defaulted claims challenging the voluntariness of the guilty plea and the trial court's venue jurisdiction are meritless. (*Id.,* pp. 33-38).

## OPINION

### A. Petitioner Has Waived Most Of His Claims For Relief

On direct appeal to the Ohio Court of Appeals, petitioner only challenged his conviction and sentence on the ground that the sentence imposed on January 13, 2003 "was not the sentence agreed to" between the parties of six months in prison with credit for time served and three years of community control. (*See* Doc. 6, Ex. 17, pp. 5-11).

In contrast, in the petition, petitioner now seeks to challenge his conviction and sentence on numerous additional constitutional grounds. (*See* Doc. 1).

In the return of writ, respondent contends that most, if not all, of these additional claims have been waived by petitioner. (Doc. 6, Brief, pp. 25-35).

Respondent's argument has merit.

First, as respondent has argued, by pleading guilty, petitioner waived all non-jurisdictional defects in the trial proceedings. *See United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986). Rather, he may only seek to attack the

validity of his guilty plea by showing that under the circumstances, his plea was not intelligently and voluntarily entered.  *Tollett,* 411 U.S. at 267; *Campbell,* 769 F.2d at 315.

In this case, the following claims relate to purported non-jurisdictional defects or deprivations of constitutional rights that occurred before petitioner entered his guilty pleas: (1) the claim alleged in Ground One of the denial of a "fair and speedy trial;" (2) the claims alleged in Ground Two that petitioner was denied the right to counsel at a "preliminary" pre-indictment hearing and was denied the opportunity to obtain counsel of his choice due to the bond that was set at a September 13, 2002 hearing held three days after his indictment; (3) the claims alleged in Ground Two challenging the effectiveness of petitioner's trial counsel based on errors committed pretrial in investigating and preparing the defense, as well as during the pretrial and trial proceedings preceding the plea;[6] (4) any claim alleged in Ground Two that petitioner's trial counsel was ineffective in

---

[6] It is clear from the record, which includes the transcript of the plea hearing, that the challenged plea agreement in the Brown County case included an agreed-upon prison sentence with community control sanctions, which petitioner explicitly stated that he understood constituted a term of his plea bargain with the State.  (*See* Doc. 6, Ex. 56, Tr. 20-26, 32). Therefore, any ineffective assistance of counsel claim stemming from the failure at sentencing to ensure petitioner's consideration for treatment in lieu of incarceration also was waived upon the entry of petitioner's knowing, intelligent and voluntary plea.  *Cf. Cornell v. Jeffries,* No. 2:05cv948, 2006 WL 2583300, at *8 (S.D. Ohio Sept. 7, 2006) (Smith, J.) (and numerous Ohio cases cited therein) (holding that petitioner had waived the right to appeal his sentence under Ohio Rev. Code § 2953.08(D) by agreeing as part of the plea bargain to the jointly recommended sentence that was imposed); *see also State v. Porterfield,* 829 N.E.2d 690, 694 (Ohio 2005) (the defendant's sentence, which was "authorized by law" and was jointly recommended by the defendant and the prosecution as a term of the plea agreement, was not subject to review under Ohio Rev. Code § 2953.08(D)).

failing to challenge the trial court's venue jurisdiction;[7] (5) the due process claims alleged in Ground Three challenging the sufficiency of evidence, petitioner's "re-indictment" after the dismissal of certain charges, and the prosecutor's pretrial and trial conduct; (6) the equal protection claim alleged in Ground Four of the denial of the right to counsel at a pre-indictment "preliminary hearing;" and (7) the equal protection claims alleged in Ground Four challenging the propriety of the trial court's sentencing determination pursuant to the parties' plea agreement to the extent petitioner was not provided a "meaningful opportunity" for treatment consideration, *see supra* p. 10 n.6, and to the extent the sentence was imposed in violation of Ohio law and under Ohio's unconstitutional sentencing statutes.[8]

---

[7] This claim, derived from Ohio Rev. Code § 2901.12, which vests venue in the county where the charged offenses were committed, does not trigger non-waivable jurisdictional issues or concerns involving a material element of the crimes charged; instead, venue is a "personal privilege," or a fact that the State must prove beyond a reasonable doubt *unless it is waived by the defendant. See State v. McCartney,* 563 N.E.2d 350, 351 (Ohio Ct. App. 1988) (citing *State v. Headley,* 453 N.E.2d 716, 718 (Ohio 1983)), *appeal dismissed,* 536 N.E.2d 382 (Ohio 1989); *see also State v. Williams,* 557 N.E.2d 818, 822 (Ohio Ct. App. 1988) (citing *State v. Shrum,* 455 N.E.2d 531, 533 n.2 (Ohio Ct. App. 1982)) (as distinguished from subject matter jurisdiction, which is "so basic" that it can be challenged at any time, venue "can only be raised before a trial begins and, if it is not raised, then it is considered waived"). By entering a valid guilty plea, the defendant waives his right to have the State establish venue beyond a reasonable doubt and is precluded from challenging the factual issue of venue on appeal. *McCartney,* 563 N.E.2d at 351; *see also State v. Woodliff,* No. 2004-P-0006, 2005 WL 1075691, at *3-5 (Ohio Ct. App. 11 Dist. May 6, 2005) (unpublished), *appeal dismissed,* 835 N.E.2d 384 (Ohio 2005).

[8] It is noted that under Ohio Rev. Code § 2953.08(D), the sentencing judge was not required to "independently justify" petitioner's sentence as otherwise required by Ohio law, to the extent the imposed sentence included a term of imprisonment and community control sanctions which did not exceed the maximum sentence proscribed for the charged offenses and was jointly recommended by the parties in their negotiated plea agreement as the appropriate sentence to be imposed. *See, e.g., Porterfield,* 829 N.E.2d at 694; *State v. Hawkins,* No. CA2005-07-024, 2006 WL 3833974, at *1-2 (Ohio Ct. App. 12 Dist. Dec. 28, 2006) (unpublished). In addition, by agreeing as a term of the plea bargain to a specified prison sentence with community control sanctions, petitioner waived any argument that such sentence was imposed under statutory standards held to be unconstitutional by the Ohio Supreme Court in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), in light of *Blakely v. Washington,* 542 U.S. 296 (2004). *See, e.g., State v. Richardson,* No. 87886, 2007 WL 18792, at *1 (Ohio Ct. App. 8 Dist. Jan. 4, 2007) (unpublished) (and cases cited therein); *State v. Kimble,* No. 2005-T-0085, 2006 WL 3350483, at *5 (Ohio Ct. App. 11 Dist. Nov. 17, 2006) (unpublished) (and cases cited therein); *State v. Bower,* No. 06CA3058, 2006 WL 3530134, at *3 (Ohio Ct. App. 4 Dist. Nov. 30, 2006) (unpublished) (and cases cited therein); *see also State v. Graham,* No. 05AP-588, 2006 WL 465104, at *3 (Ohio Ct. App. 10 Dist. Feb. 28, 2006) (unpublished) (and cases cited therein), *appeal dismissed,* 849 N.E.2d 1029 (Ohio 2006).

Therefore, as long as petitioner entered his guilty plea knowingly, voluntarily and intelligently, with sufficient awareness of the relevant circumstances and likely consequences, *see, e.g., Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222 (1994), he is unable to challenge his conviction based on the claims of non-jurisdictional error listed above which are alleged as grounds for relief herein.

Second, as respondent also has argued in the return of writ, petitioner has waived all but two of his claims for habeas relief due to his procedural defaults in the state courts.

In recognition of the equal obligation of state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual

prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults.

First, as mentioned above, *see supra* p. 9, petitioner presented only one claim of error to the Ohio Court of Appeals for consideration on direct appeal from his conviction and sentence–i.e., that the trial court had improperly sentenced him to longer terms of imprisonment and community control supervision than he had agreed to as part of the negotiated plea bargain. Although petitioner did attempt to raise more claims on further appeal to the Supreme Court of Ohio from the Court of Appeals' direct appeal decision (*see* Doc. 6, Ex. 21), that court lacked jurisdiction to consider such claims which had not been asserted below. *See Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983); *see also* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966).

Second, petitioner committed a procedural default with respect to the ineffective assistance of appellate counsel claims alleged in his application for reopening of the appeal, which were based on counsel's failure to assert numerous claims of error on direct appeal. (*See* Doc. 6, Ex. 24). Petitioner filed a timely reopening application, which was considered by the Ohio Court of Appeals. (*See id.,* Ex. 26). However, petitioner failed to appeal further to the Supreme Court of Ohio from the denial of his reopening application on November 19, 2004; after the 45-day period for filing a timely appeal expired, he was unable to pursue a delayed appeal to the state supreme court in that matter. *See* Rule II, § 2(A)(1)(a) and § 2(A)(4)(a)-(b), Rules of Practice of the Supreme Court of Ohio.

Finally, petitioner has procedurally defaulted all but two of the claims of error that he presented to the state courts in his petition for post-conviction relief. (*See id.,* Ex. 27). In its decision denying relief, the trial court found that it had jurisdiction to accept petitioner's guilty pleas, and that such pleas "were made knowingly, intelligently, and voluntarily, as required by Criminal Rule 11." (*Id.,* Ex. 34, p. 4). The court further rejected claims that petitioner's pleas were "coerced" and that the sentence imposed failed to comport with petitioner's

understanding of the terms of the parties' negotiated agreement; the court reasoned as follows:

> . . .[W]hile there may have been discussion regarding a six-month sentence between the State of Ohio and the defendant, the defendant effectively received a six-month sentence when the Court sentenced him to nine months in prison, with approximately three months of jail time credit. These matters were discussed fully with the defendant, who was represented by counsel, at his plea upon December 17, 2002, and this Court finds that there was not coercion, that the Court explained the terms of the proposed plea agreement and discussed the same with the defendant. Further, the defendant indicated his understanding of the same. As to the allegation that the defendant should have been permitted to withdraw his plea (per January 27, 2003 Motion to Arrest Judgment Entered on January 13, 2003), sentence was pronounced on January 13, 2003, and Criminal Rule 32.1 provides that a motion to withdraw a plea of guilty may be made only before sentence is imposed. In this case, sentence had been imposed and pronounced in open court. The Court further cites [a case], wherein the Twelfth District Court of Appeals held that absent coercion, and the defendant being fully informed, the defendant cannot complain or challenge his sentence when he in fact received what he asked for. In this case, the defendant was sentenced in accordance with the terms of the plea agreement and as discussed by the Court with the defendant at the plea hearing.

(*Id.*, p. 8).

With respect to petitioner's remaining claims, the trial court found the claim challenging Brown County's jurisdiction over the criminal charges, which apparently was first raised in petitioner's January 27, 2003 *pro se* motion to arrest judgment, was barred from review by *res judicata* because the issue "could have been raised at trial, or on an appeal from that judgment." (*Id.,* p. 7). Although the court alternatively summarily rejected that and other claims asserted in the post-conviction petition as lacking in merit, the trial court explicitly held:

> . . . .[R]es judicata applies to prohibit this Court's consideration of many of the defendant's assertions. Likewise, the guilty pleas

14

constitute the defendant's waiver of his right to assert certain matters, which arose during the two days of trial itself.

The Court finds that the defendant has failed to attach any affidavits, that his documentary evidence does not contain sufficient operative facts to warrant this Court's finding substantive grounds for relief, and that the Court is accordingly left to speculate as to many of the defendant's grounds for relief. Not only are these operative facts necessary under 2953.21(E), of the Ohio Revised Code, but they are required by case law. . . .

(*Id.,* p. 4).[9]

The Ohio Court of Appeals, which was the last state court to issue a reasoned decision in the post-conviction matter, affirmed the trial court's judgment. (*Id.,* Ex. 39). The court overruled the assignment of error challenging the trial court's jurisdiction, reasoning that "R.C. 2901.11(A)(1) and R.C. 2931.03 vest both subject matter and territorial jurisdiction in the trial court." (*Id.,* p. 1). The court also rejected petitioner's claim alleging that his plea had been induced by "coercion," finding that the dismissal of the petition without a hearing was proper "where, as in the present matter, the record contains no indication that the plea was the result of coercion, and the petitioner fails to submit evidence outside the record demonstrating that the guilty plea was coerced." (*Id.,* pp. 1-2). Finally, the court rejected petitioner's remaining assignments of error as barred by *res judicata* "[a]bsent presentation of sufficient evidence outside the record." (*Id.,* p. 2).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62. The "adequate and independent state ground" doctrine has

---

[9] It is noted that to the extent the state trial court rejected certain claims because they were barred from review on state procedural grounds and alternatively lacked merit, waiver analysis may still apply at that level of state court review. Under the adequate and independent state ground doctrine discussed *infra* pp. 15-16, a federal habeas court must honor state-law holdings that are considered a sufficient basis for the state court's judgment even in cases where the state court alternatively addresses the merits of the federal claims. *See Sochor v. Florida,* 504 U.S. 527, 533 (1992) (and cases cited therein); *Harris,* 489 U.S. at 264 n.10; *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied,* 528 U.S. 842 (1999).

been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813.

Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993).

Here, as the last state court to render a reasoned decision addressing the claims raised in petitioner's petition for post-conviction relief, the Ohio Court of Appeals clearly and expressly relied on adequate and independent state grounds "firmly established and regularly followed" in Ohio when it determined that (1) most of petitioner's claims were barred from review under Ohio's *res judicata* doctrine absent the "presentation of sufficient evidence outside the record;" and (2) petitioner was not entitled to a hearing on his claim that his plea was coerced where there was neither evidence in the record nor sufficient outside evidence submitted to suggest the plea was coerced.[10]

_____

[10] *See Lorraine v. Coyle,* 291 F.3d 416, 426-27 (6th Cir.) (procedural default of claims based on failure "to present the necessary proof in the state postconviction review" has been "routinely and regularly applied in the Ohio courts") (citing *State v. Calhoun,* 714 N.E.2d 905, 910 (Ohio 1999), and *State v. Jackson,* 413 N.E.2d 819, 823 (Ohio 1980)), *corrected on other grounds on denial of rehearing,* 307 F.3d 459 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003);

The Supreme Court of Ohio's later unexplained entry denying leave to appeal and dismissing the appeal "as not involving any substantial constitutional question" (*see* Doc. 6, Ex. 43) is presumed to rely on those same state procedural grounds. *Cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

Therefore, petitioner has waived all but two of his claims for federal habeas relief as a result of his various procedural defaults in the state courts absent a showing of cause for his defaults and prejudice resulting from the alleged constitutional errors, or that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated that a fundamental miscarriage of justice will occur or, in other words, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the forgery offenses, if his procedurally-defaulted claims are not addressed on the merits by this Court. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Petitioner has argued, however, that his appellate counsel's ineffectiveness constitutes "cause" for his procedural default in failing to raise a number of claims of error on direct appeal to the Ohio Court of Appeals. Ineffective assistance of appellate counsel may constitute "cause" for a procedural default. *See Murray,* 477 U.S. at 488. However, as discussed above, *see supra* p. 13, petitioner

---

*Palmer v. Bagley,* No. 1:00-CV-882, 2005 WL 3965400, at *25 (S.D. Ohio Dec. 16, 2005) (Merz, M.J.) (and cases cited therein) (unpublished), *adopted,* 2006 WL 1027733 (S.D. Ohio Apr. 17, 2006) (Rose, J.) (unpublished); *see also Mason v. Mitchell,* 320 F.3d 604, 628 (6th Cir. 2003) (reiterating holding in *Coleman v. Mitchell,* 268 F.3d 417, 427 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002), that "the application of res judicata under Ohio law 'is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas'"); *Palmer, supra,* 2005 WL 3965400, at *25 (and numerous cases cited therein, including *State v. Cole,* 443 N.E.2d 169 (Ohio 1982); *State v. Ishmail,* 423 N.E.2d 1068 (Ohio 1981); *State v. Perry,* 226 N.E.2d 104 (Ohio 1967)).

procedurally-defaulted his ineffective assistance of appellate counsel claims in the state courts because he did not appeal the denial of his reopening application to the Supreme Court of Ohio.  Petitioner, therefore, is unable to demonstrate "cause" in this case based on such contention.  *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey,* 395 F.3d at 679.

Accordingly, in sum, the undersigned concludes that because of his procedural defaults in the state courts, petitioner has waived all but two of his claims for relief challenging the validity of his sentence under the terms of the plea agreement and the venue jurisdiction of the trial court.  Moreover, by pleading guilty to the charges, petitioner has waived all non-jurisdictional defects or constitutional errors alleged by him as grounds for relief in the petition, including the venue jurisdiction issue, as long as it is determined that his guilty pleas were made knowingly, intelligently and voluntarily.

### B.  Petitioner Is Not Entitled To Relief Based On His The Merits Of His Remaining Claims Challenging The Constitutionality Of His Guilty Pleas

Petitioner's remaining claims, which arguably neither were procedurally defaulted nor waived when petitioner entered his guilty pleas, stem from allegations challenging the constitutionality of the pleas.  Petitioner has not claimed that he entered his guilty pleas unknowingly, involuntarily or unintelligently, except to the extent he has alleged he was "threatened and coerced" into entering the pleas and had not agreed to the sentence that was imposed by the trial court.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid.  *Boykin v. Alabama,* 395 U.S. 238, 244 (1969).  "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).  In applying this standard, the Court must look at the totality of circumstances surrounding the plea.  *Id.*  A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness.  *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

In addition, when, as here, a prisoner challenges his guilty plea on the basis

18

that it was induced by an unkept promise, the Court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to warrant a summary dismissal. *Blackledge v. Allison,* 431 U.S. 63, 76 (1977). In applying this standard, the Court will indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.*

In this case, the record does not support petitioner's claim of coercion or that his plea was anything other than a "voluntary and intelligent choice among the alternative courses of action open to" him. *See Sparks,* 852 F.2d at 885(quoting *Alford,* 400 U.S. at 31).

On direct appeal, petitioner argued his guilty pleas were not knowing or voluntary because, as a result of "confusing" and "ambiguous" statements made at the plea hearing, he believed that the agreed-upon "recommended sentence" was for six months in prison and three years of community control.

With respect to petitioner's claim regarding his understanding that he would be sentenced to three as opposed to five years of community control, it is conceded that the Ohio Court of Appeals erred in finding that the trial court only mentioned "three years" in reference to petitioner's post-release control supervision by the Ohio Adult Parole Authority, and "never in reference to community control sanctions," at petitioner's plea hearing. (*See* Doc. 6, Ex. 19, p. 10; *see also* Ex. 56, Tr. 20). However, the issue was ultimately resolved in petitioner's favor when the trial court *sua sponte* amended petitioner's sentence on March 24, 2005 to reflect the parties' agreement as stated on the record at the plea hearing that the "recommended sentence" included a three-year term of community control supervision. (*Id.*, Ex. 44). Therefore, petitioner cannot claim that his guilty pleas

19

are invalid with respect to the community control aspect of his sentence.

In rejecting petitioner's claim regarding the length of his prison sentence, the Ohio Court of Appeals made findings of fact, which are presumed correct,[11] and ruled in relevant part as follows:

> The trial court started the plea hearing by noting that "the State has indicated that it would have an intention of pursuing additional charges by re-indictment if the Court should grant the [defense's] Rule 29 Motion [for acquittal filed at the close of the State's case]. So there is some benefit to Mr. Todd by pursuing a plea agreement which has been fashioned here this afternoon. *** And it's my understanding there will be a plea agreement as to all twenty-six (26) counts of this Indictment with a recommendation to the Court." The state then recited the terms of the plea agreement as follows:

> "The Defendant would enter a plea of Guilty to each of the twenty-six (26) counts of this Indictment that charge him with forgery in violation of Section 2913.31(A)(2) of the Ohio Revised Code. *In exchange for those pleas and a finding of guilty by the Court the State would recommend that he receive a sentence of basically nine (9) months with credit for time served since September 12th or 13th*, *** and that he be ordered to make restitution in full for all of these checks, including the four checks that are not indicted[.]" When asked if this was his understanding of the plea agreement, appellant's counsel replied that it was not, but only insofar as to the four additional "non-indicted" checks. After further negotiation, appellant agreed to make restitution for the additional four checks.

> The trial court then asked appellant if he understood the terms of the plea agreement. Appellant replied "Yes sir, I believe I do." The trial

---

[11] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

court further asked appellant if he was satisfied to go forward on that basis.  Appellant responded in the affirmative.  Appellant also stated that he fully understood everything the parties were talking about.  At no time prior to this did appellant question or challenge the state's recommendation of nine months in prison with credit for time served.

The alleged confusing statements made by the trial court occurred next as the court attempted to explain to appellant the issues of credit and community control with regard to appellant's sentence:

"All right.  Now, although there's a recommended sentence and I'm inclined to go along with the recommendation in this matter, I must advise that each of these 26 Counts is a felony of the fifth degree.  Each would carry up to 12 months in prison, and each would carry up to a [$2,500] fine. *** Do you understand that, Mr. Todd?"  Appellant replied that he did.

"All right.  Now, it's been recommended that you would receive a prison sentence of essentially nine months with credit for approximately six months.  Do you understand that?"  Appellant replied that he did.

"Now, it's also recommended that you would be placed under sanctions, community control sanctions, or what we used to call probation for a period of three years.  *** But I must advise you Mr. Todd upon your release from prison you would be subject to post release control or essentially what we used to call parole.  It is not required on fifth degree felonies.  It is optional at the discretion of the Ohio Adult Parole Authority.  However, if they choose to place you under that control they can do so for up to three years on a fifth degree felony. *** If you violated their rules then as a part of this Court's sentence for each post release control violation you could receive an additional prison term of up to four-and-a-half months, being one-half of nine months.  Do you understand that, Mr. Todd?"  Appellant replied that he did.

The trial court continued: "The most you could receive for multiple post release control violations would also be limited to four-and-a-half

21

months or one-half of the nine months. *** Do you understand that?" Appellant replied that he did.

"Now, I'm going to discuss with you community control sanctions, because upon your release from the prison sentence you will be under sanctions with the Probation Department of this Court." The record shows that as the trial court explained to appellant community control sanctions, appellant conferred several times with his attorney with regard to several statements made by the trial court:

"Mr. Todd, we were discussing . . . community control sanctions. And that if you committed an act that violated your community control sanctions with this Court, if the Court felt that a prison sentence was warranted, the Court could sentence you to prison on each of these counts. And essentially you could receive up to twelve months on each[.] I have indicated that my intention would be to run them consecutive sentences only to a cumulative total of two years." Thereafter, *after conferring with his client, appellant's counsel told the court that "Mr. Todd has asked that I request that the nine months that will be served be taken off the two years*." The state replied that appellant "would get credit for three months, *** but not the full time." The trial court then explained:

"Well, I'm going to specify that for example Counts 2 and 3, if I select one year on each of those consecutive to one another, they'd also be consecutive to Count 1 in which I would impose the six months here this afternoon or whenever we do the sentencing. So he would not get credit in that circumstance." When asked by appellant's counsel "not get credit for the three months, or do we get credit for the six?" the trial court replied: "He would get credit for the three months but not for the six, because that would be time awaiting trial. The six months is a separate sentence that I will specify as consecutive to Counts 2 and 3. *** The time is running, for example, from September 13th. So if I say nine months, you're getting credit for today, yes. *** This is a little confusing, I understand that. All right, do you have any other questions, Mr. Todd?" Appellant replied that he did not.

The trial court then engaged in a discussion with appellant pursuant to Crim.R. 11.  Thereafter, when asked if he had any questions about his rights or for the trial court, appellant replied he did not.  After appellant pled guilty to the 26 counts of forgery, the trial court noted that appellant "did have some questions, conferred with his counsel ***, and *** indicated that all questions were answered to his satisfaction by the Court and/or [his attorney].  I will also find that the terms of the plea agreement were discussed in significant detail, that [appellant] did have a certain amount of input into the formulation of the plea agreement, conferring with [his attorney], [his attorney] in turn conferring with [the state] and actually both Attorneys as well as [appellant] some discourse with the Court."

After carefully reviewing the transcript of the plea hearing as well as the guilty plea entry, we find that appellant was never promised by the state or the trial court that he would be sentenced to six months in prison.  The state clearly recommended that appellant be sentenced to nine months in prison in exchange for his guilty plea.  The trial court told appellant it was inclined to go along with the recommendation, and in fact, did not deviate from the terms of the plea agreement. . . .

After reviewing the [plea] hearing . . . in its entirety, and judging the exchange between the parties and the trial court by objective standards, we find that while appellant may have been mistaken regarding his sentence, we cannot say that he was reasonably justified in his mistaken impression.  Appellant conferred at length several times with his attorney during the plea hearing.  The state consistently recommended that appellant be sentenced to nine months in prison.  The guilty plea entry, signed by the parties' attorneys and the trial court, clearly refers to the sentence of nine months in prison. . . .  The trial court thereafter followed the state's recommendation to the letter.

(*Id.,* Ex. 19, pp. 5-10) (emphasis added).

Upon review of the transcript of the plea hearing, the undersigned finds that the Ohio Court of Appeals' assessment of this issue is based on a reasonable determination of the facts in light of the record evidence.  *See* 28 U.S.C. § 2254(d). The undersigned further concludes that petitioner entered his guilty

23

pleas voluntarily in the absence of any threats or unkept promises by his counsel, the trial judge or the prosecutor, as well as intelligently with full knowledge that a nine-month prison sentence with credit for time served was the "recommended sentence" of the parties.

The record reflects that the trial judge explicitly admonished petitioner to "obviously" pay heed to the prosecutor's recitation of the parties' plea agreement, which was tendered at the start of the plea proceeding.  In that recitation, the prosecutor clearly, succinctly and non-ambiguously stated right up front that in exchange for petitioner's pleas of guilt, the State was recommending that petitioner receive a prison sentence of nine months with credit for time served beginning September 12 or 13 of 2002.  (Doc. 6, Ex. 56, Tr. 11).

As the Ohio Court of Appeals mentioned, although defense counsel disputed another point set forth by the prosecutor as a term of the parties' plea agreement, neither he nor petitioner ever expressed any disagreement with the State's recommendation regarding petitioner's prison sentence.  Indeed, when after much discussion the parties reached an agreement as to the disputed matter, petitioner indicated to the trial judge that he believed he understood the terms of the plea agreement and was "satisfied to go forward [with his plea] on that basis."  (*Id.,* Tr. 16).

After the prosecutor continued with a "brief statement of facts" about the 26 forgery charges, petitioner further acknowledged that he understood he would be admitting to "the forgery of those twenty-six (26) checks by the check numbers in the amounts [previously] set forth by [the prosecutor] on or about July or early August of 2002 in Brown County, Ohio." (*Id.,* Tr. 17-19).  In response to additional questioning by the trial judge, petitioner also affirmed that he was not "under the influence of any alcohol or drugs or anything," and so "fully" understood "everything we're talking about;" that no one had "threatened" him or "forced" him to "change [his] pleas from Not Guilty to Guilty;" that no "promises" had been made to him "other than what we've talked about in Court here this afternoon;" and that his attorney had "answered [his] questions to [his] satisfaction." (*Id.* Tr. 19).  As the Ohio Court of Appeals pointed out, throughout this discussion and, indeed, the entire plea hearing, petitioner never questioned or expressed any confusion or dissatisfaction about the prosecutor's initial statement that as part of the plea agreement, the State would be recommending a nine-month prison term with credit for time served.

While the trial judge made a few references to "six months," when viewed in the context of the entire plea hearing, it appears that the parties (including petitioner) understood those references pertained to the fact that petitioner would receive three months of jail-time credit and thus actually only had six months left to serve of the nine-month sentence. Petitioner affirmed that he understood he could be sentenced to additional prison terms limited to "one-half of the nine months" for violations of post release control, without questioning the court's reference to nine months. Most significantly, the record reflects no confusion on petitioner's part when after conferring with his attorney about the possibility of additional sentences up to a total of two years for violations of community control sanctions, petitioner asked his counsel to request the trial court to have any such two-year sentence reduced by the "nine months that will be served." (*Id.,* Tr. 24).

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief based on his un-waived claims challenging the constitutionality of his guilty pleas in Brown County Court of Common Pleas Case No. 20022172.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to claims alleged in the petition, which this Court has concluded are barred from review on procedural waiver grounds, because under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[12] A certificate of appealability also should not issue with respect to the remaining claims challenging the constitutionality of petitioner's guilty pleas, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

---

[12] Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether the procedurally-defaulted grounds for relief state viable constitutional claims. *See Slack,* 529 U.S. at 484.

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  __2/21/07____                    _s/Timothy S. Black_____
      cbc                                 Timothy S. Black
                                      United States Magistrate Judge

J:\BRYANCC\2007 habeas orders\05-737denyToddpet.waiv-gp.gpvalid-sentence.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

_____

Jack Broward Todd,
      Petitioner

      vs                          Case No. 1:05cv737
                                    (Spiegel, S.J.; Black, M.J.)

Jeffrey Wolfe,
      Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).